[Civ. No. 22027. Second Dist., Div. Two. Feb. 6, 1957.]

EDWARD OPPENHEIM, Respondent, v. I. H. GOODLEY, Appellant.

I. H. Goodley, in pro. per., for Appellant.

Gomer & Himmelfarb for Respondent.

FOX, J.—Defendant appeals from a judgment decreeing that his homestead on certain property is set aside and declared void as to plaintiff, and that plaintiff is entitled to execute upon such property to satisfy a judgment against defendant.

The case was submitted to the trial court upon stipulation that defendant admitted all the allegations of plaintiff's first

cause of action in his first amended complaint. No other evidence was introduced by either party.

It thus appears that in July, 1948, plaintiff filed an action against defendant in the Los Angeles Municipal Court on which plaintiff recovered a judgment against defendant for $1,800 in March, 1950. In January, 1949, defendant filed a homestead on the property here involved. With full knowledge of his insolvency, he conveyed this property, in June, 1949, to his daughter-in-law, Eleanor Katz, receiving in payment therefor an unsecured promissory note. In the latter part of March, 1950, an execution was issued upon the $1,800 judgment. The execution was returned wholly unsatisfied and no part of the judgment has been paid.

In March, 1951, plaintiff brought an action in the superior court to set aside the conveyance of the property to Eleanor Katz on the ground that it was in fraud of defendant's creditors. In due course a judgment was rendered in that action decreeing said conveyance to be void as against plaintiff and that plaintiff was entitled to proceed in the required manner to satisfy his outstanding judgment.

In September, 1953, plaintiff had another execution issued on the municipal court judgment and caused the sheriff to levy it upon the property in question. Defendant immediately notified the sheriff that there was a homestead on the property, dated January 27, 1949. The sheriff thereupon refused to sell the property until a judicial determination of the validity of the asserted homestead.

Subsequent to the declaration of the homestead, defendant altered the residence, "so that it is now a duplex type building, having two separate entrances, one to each of the two residences, and two different families reside in the said separate portions of the building."

Finally, it is alleged that defendant's homestead is void as against plaintiff, in that it was "abandoned and destroyed" by defendant's conveyance of the property to Eleanor Katz.

As noted at the outset, the court held the homestead is void as to plaintiff and that plaintiff is entitled to execute on the property to satisfy his judgment. It is from this judgment that defendant appeals.

The basic question is whether the conveyance to Mrs. Katz worked an abandonment of the homestead.[1]

---

[1]Civil Code, section 1243, provides, in part: "A homestead can be abandoned only by a declaration of abandonment, or a grant thereof. . . ."

Defendant's thesis is that homesteads are not subject to the law of fraudulent conveyances—that is, the doctrine which invalidates fraudulent conveyances against creditors has no application where the property is homesteaded and thus exempt from execution by the creditors. The authorities in this state support his position. (*Montgomery* v. *Bullock,* 11 Cal.2d 58, 62 [77 P.2d 846] ; *Wood* v. *Emig,* 58 Cal.App.2d 851, 859-861 [137 P.2d 875] ; *Nicholdson* v. *Nesbitt,* 4 Cal.App. 585, 588 [88 P. 725] ; *Wetherly* v. *Straus,* 93 Cal. 283, 286 [28 P. 1045] ; *Payne* v. *Cummings,* 146 Cal. 426, 431-432 [80 P. 620] ; 24 Am.Jur., Fraudulent Conveyances, § 109, pp. 259-260; 25 Cal.Jur.2d, Homesteads, § 100, p. 416; 37 C.J.S., Fraudulent Conveyances, § 31, p. 878.)

In *Palen* v. *Palen,* 28 Cal.App.2d 602, 606 [83 P.2d 36], the court stated: "Neither is a homestead abandoned by a conveyance made for the purpose of avoiding creditors." In reaching this conclusion, the court adopted as its own the reasons given in 13 Ruling Case Law, page 660: "A homestead is not liable to seizure under execution, and therefore a conveyance of it is a question in which the creditor has no interest. It is not liable before conveyance to the claim he asserts; and the conveyance, though fraudulent, puts the creditor in no better condition than he was in before. If the conveyance is set aside as fraudulent this leaves the homestead as if no attempt had been made to convey it, so far as any claim can be asserted by the creditor. It is void as to him to all intents and purposes. He cannot be heard to say in one and the same breath that the conveyance is void in its attempt to divest title out of the debtor, but is valid in destroying the homestead right. He cannot claim both under and against the conveyance; under it as a valid parting with the homestead right; against it as an abortive effort to pass title out of the debtor. It must stand, as to him, as if no conveyance had been attempted."

In *Montgomery* v. *Bullock, supra,* property subject to a homestead was conveyed by defendant Bullock to a Mrs. James in contemplation of insolvency and with intent to defeat plaintiff's claim. The court held that although the transfer was void as against plaintiff as a fraudulent transfer, plaintiff could not complain because it was an asset plaintiff could not have reached had no conveyance been made. The court stated (p. 62) : "As the doctrine bearing upon conveyances made to hinder, delay and defraud creditors has no application to the creation of a homestead, the homestead here

was not invalidated by reason of the pendency of plaintiff's tort action, and it was exempt from execution or forced sale in satisfaction of the judgment for damages later obtained by plaintiff in said action. [Citations.] Furthermore, it has long been the rule that a gift, sale, or pledge of any part of a *homestead cannot, under any circumstances, be with intent to defraud a creditor not having a lien*[2] upon the premises, for a creditor is not entitled to complain of the transfer by the debtor of an asset which he could not have reached, had the debtor retained it. [Citations.] Thus the validity of Mrs. Bullock's conveyance of the homestead to Mrs. James was not subject to attack by plaintiff on the ground that it was made in fraud of creditors or otherwise. If the conveyance was invalid, then the property remained impressed with the homestead and was not subject to plaintiff's claim. If the conveyance was valid, then the property, in passing to the grantee, retained the exemption which it acquired by reason of the homestead. In either event the matter was no concern of plaintiff, for she could not reach the homestead or the fruits of sale thereof.''

In *Wood* v. *Emig,* 58 Cal.App.2d 851, 861 [137 P.2d 875] (hearing denied), Mr. and Mrs. Wood filed a declaration of homestead on certain property on which they lived. Thereafter a judgment was recovered against them and a writ of execution levied on the property. Mr. and Mrs. Wood conveyed the property to their son and daughter, the deed being recorded some two months after the recordation of the judgment (which had been recovered elsewhere) in the county where the property was situated. Plaintiffs asserted the property was exempt because of their declaration of homestead. Defendants argued, as here, that the deed to the son and daughter effected an abandonment of the homestead under the terms of section 1243, Civil Code. (See footnote, *supra.*) In sustaining plaintiffs' position the court stated (p. 859) : ''By transferring the property to their children, plaintiffs put defendants in no different position than before the transfer took place. While the property was homesteaded in plaintiffs' favor, the defendants could not reach it for the satisfaction of their judgment—so it is immaterial to the creditors whether or not the debtors retained or transferred the property.''

---

[2] In the case at bar plaintiff had no judgment lien on the property either on the date the declaration of homestead was filed (January 27, 1949) or on the date defendant conveyed to Mrs. Katz (June 2, 1949) since his judgment was not rendered until March, 1950.

The rationale of these decisions is that since the creditor cannot subject the homestead to the satisfaction of his judgment, a conveyance of it cannot injure him for he is not harmed by being deprived of the right to subject to the satisfaction of his judgment property not subject to levy. Otherwise stated, if the homestead is valid, no attempted disposition or conveyance of the property, however fraudulent, injures the creditor. For such act, whether effective or not, leaves the creditor in the same position in which he would have been before it was done. (*Montgomery* v. *Bullock, supra*; *Wood* v. *Emig, supra*; *Payne* v. *Cummings, supra,* p. 432; *Nicholdson* v. *Nesbit, supra.*) While defendant's attempt to defeat his creditors is not commendable, such conduct neither enlarges plaintiff's rights nor gives him benefits as punishment of defendant. In such circumstances the defendant's motives are immaterial. (*Nicholdson* v. *Nesbit, supra.*) As stated in *Hing* v. *Lee,* 37 Cal.App. 313, at page 316 [174 P. 356] : ''Debts should be paid, but public policy recognizes the exemption of certain property belonging to debtors as even more important than the payment of his debts. Otherwise it would not be protected by the law from execution.''

The application of these principles to the case at hand leads to the conclusion that the trial court erred in decreeing that the homestead of defendant on the property in question be set aside and declared void as to plaintiff, thus enabling plaintiff to levy upon such property in satisfaction of his judgment.[3]

Plaintiff argues that a fraudulent conveyance of the property works an abandonment of the homestead except in cases where there is either a failure to convey the entire estate or the grantee took title to hold in trust for the grantor. However, in both the Montgomery and Wood cases, *supra,* there was an outright conveyance of the entire interest yet the court, nevertheless, held the property impressed with a homestead as against a creditor of the grantor.

Plaintiff incidentally adverts to defendant's admission of

---

[3]It should be pointed out that plaintiff is not foreclosed by what is said here of any of the rights available to him by law as a judgment creditor seeking to levy execution on homesteaded property. When property fraudulently conveyed is impressed with a homestead the judgment creditor may, if he complies with the procedure provided for in sections 1245-1259 of the Civil Code, reach *any excess* over the homestead exemption in the hands of the transferee. (See *Marilli* v. *Keating,* 208 Cal. 528, 531 [282 P. 793], and *Martin* v. *Hildebrand,* 190 Cal. 369, 373 [212 P. 618].) The record does not indicate that plaintiff followed the pro cedure outlined in these code sections.

paragraph 10 of the first cause of action to the effect that the homestead was abandoned and destroyed by the conveyance to Mrs. Katz. This is obviously a conclusion of law assertedly flowing from the facts alleged. But, as developed above, it is an erroneous conclusion. Clearly defendant's admissions were directed to the facts properly pleaded and not to invalid conclusions that would have the effect of striking down the heart of his case. The entire conduct of defendant's case is predicated on his contention that his conveyance to Mrs. Katz did not work an abandonment of his homestead as against a judgment creditor.

 Plaintiff argues that the transformation of the building into a duplex destroys the homestead as to the part of the house not occupied by defendant. Since, however, the homestead relates to but one building, which is being used as a residence by defendant, this argument is without merit. (*Hohn* v. *Pauly*, 11 Cal.App 724, 728-730 [106 P. 266]; *Vincenzini* v. *Fiorentini*, 2 Cal.App.2d 739, 741-742 [38 P.2d 876]; *Phelps* v. *Loop*, 64 Cal.App.2d 332, 333-334 [148 P.2d 674].)

The judgment is reversed.

MOORE, P. J.—I concur.

It should be added, however, that the right to be protected in the preservation of one's homestead is of serious concern to the state. The scheme of maintaining a barrier about a man's home is perpetuated so that by reason of flood, fire or mismanagement, his family will not be lodged beneath the elements or the stars. Provision for him who may shudder and be afraid when the wolf comes scratching at his door was not made for the purpose of enabling him to cheat his neighbor but so that the serenity of society may be promoted and encouraged. Neither the welfare of a family, its comforts, its health and happiness, nor the arts which flourish only among a contented people, can be maintained with a crescendo of zeal and patriotic fervor if every constituent of the state be subject to removal from his castle for debt.

The vulgar notion of persons to cheat their creditors by concealing their movables or clouding their titles is not to be commended. But despite such acts, the owner of a homestead may not be penalized for his indiscretion by erasing his homestead from the official records. Indeed, it is not necessary for a man to impair the title to his homestead

because the state has generously constructed a bulwark around his "exempt" possessions which, if he chooses, may protect him against invasions of the righteous. If by reason of dishonest motive or of excessive zeal he may attempt to frustrate the minions of the law in the execution of judicial process, he cannot thereby be deprived of a right vouchsafed to him by the Constitution and the law. Inasmuch as appellant is unable to steal from himself his act in beclouding the title of his homestead by a transfer thereof neither impaired the rights of respondent nor caused detriment to anyone.

Therefore, because the judgment herein would, if undisturbed, deprive appellant of a valuable legal right, it should be reversed, as demonstrated by Mr. Justice Fox.

Ashburn, J., dissented.